UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **G&G CLOSED CIRCUIT EVENTS, LLC** | * | **CIVIL ACTION NO. 23-7228** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **PATIO HOOKAH LOUNGE LLC AND DONOVAN WEATHERSPOON** | * | **MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

\* \* \* \* \* \* \* \*

**ORDER & REASONS**

Before the Court is a motion for default judgment filed by Plaintiff G&G Closed Circuit Events, LLC ("G&G") against Patio Hookah Lounge LLC ("Patio") and Donovan Weatherspoon ("Weatherspoon") (collectively "Defendants"). R. Doc. 11. The motion is unopposed. The Court determined that a hearing was unnecessary because the amount of damages was ascertainable based on the record. Considering the briefing, record, and applicable law, the Court rules as follows.

**I.    BACKGROUND**

Plaintiff G&G is a distributor of certain closed-circuit pay-per view entertainment programs. R. Doc. 1 at 4. Relevant here, Plaintiff held the exclusive nationwide commercial distribution and broadcast rights of the April 22, 2023, Gervonta Davis versus Ryan Garcia Championship Fight Program (the "Program"). R. Doc. 1 at 10; *see also* 11-13 (copy of the April 29, 2022, license contract between G&G and PBC on PPV, LLC). Commercial establishments like Defendants' can purchase the viewing rights to display the Program if they pay G&G a set fee. R. Doc. 1 at 4; *see also* 11-14 ("Rate Card for April 22, 2023 PPV Gervonta Davis vs. Ryan Garcia"). According to the complaint, Defendants did not purchase a sub-license from G&G, and instead unlawfully intercepted and broadcasted the Program in violation of 47 U.S.C. §§ 605(a), (e)(3)(A), and (e)(4); 18 U.S.C. §§ 2511 and 2520; and 47 U.S.C. § 553. R. Doc. 1 at 9–14.

Defendant Patio is/was a business located at 3319 Williams Boulevard, Kenner, Louisiana, 70065. *Id.* at 1. On April 22, 2023, around 8:00 p.m., a private investigator hired by G&G entered Patio and noticed two televisions playing the Program. R. Doc. 11-5. The investigator counted the number of patrons three separate times while in the establishment and observed a crowd of 8–14 people. *Id.* at 2. The investigator attested that he believed Patio's capacity to be about forty people. *Id.* Notably, while the affidavit states that the event was advertised online on Eventbrite, the investigator failed to attach evidence of this advertisement. *See id.* at 1.

As a result of the private investigator's sworn observations and Plaintiff's own knowledge that Patio and Weatherspoon did not purchase the rights to stream the Program at a commercial establishment from Plaintiff, G&G filed a complaint in this Court alleging that Defendants unlawfully intercepted and played the Program in violation of 47 U.S.C. §§ 605(a), (e)(3)(A), and (e)(4); 18 U.S.C. §§ 2511 and 2520; and 47 U.S.C. § 553. R. Doc. 1 at 9–14. G&G seeks the following: (1) statutory damages of $110,000 pursuant to 47 U.S.C. § 605; (2) statutory damages of $60,000 pursuant to 47 U.S.C. § 533; and (3) reasonable attorneys' fees and costs. *Id.* at 14–15.

On February 22, 2024, each defendant was served with process. R. Docs. 5, 7. Neither have answered the complaint nor made any sort of appearance since being served. Consequently, G&G moved for the Clerk of Court to enter default against both Defendants on June 25, 2024, and the Clerk duly entered default two days later. R. Docs. 8, 9.

II.   **PRESENT MOTION**

G&G now asks for this Court to enter final judgment in its favor against Patio and Weatherspoon. R. Doc. 11. Plaintiff avers that it is entitled to final default judgment because it

followed all the procedural requirements and adequately pleaded its entitlement to recovery in the complaint. R. Doc. 11-3.

G&G asserts two "counts" against Defendants in its complaint: (1) Count I for violations of 47 U.S.C. § 605(a), (e)(3)(a), and (e)(4) ("Unauthorized publication or use of communications") and 18 U.S.C. §§ 2511 and 2520 (respectively, "Interception and disclosure of wire, oral, or electronic communications prohibited" and "Recovery of civil damages authorized"); and (2) Count II for violations of 47 U.S.C. § 553 ("Unauthorized reception of cable service"). As to the two distinct statutory charges in Count 1, the Court will treat Count I as solely asserting a claim pursuant to 47 U.S.C. § 605 because neither Plaintiff's complaint nor its motion for default judgment requests damages, fees, or costs pursuant to 18 U.S.C. § 2511 and 2520. *See G&G Closed Circuit Events LLC v. Rival Sports Grill LLC*, No. 12-3052, 2014 WL 198159, at *2 n.4 (W.D. La. Jan. 14, 2014) (observing the same style of pleading and treating "Count I as solely asserting a claim pursuant to 47 U.S.C. § 605" when granting motion for default judgment). Thus, the Court will not consider Defendants' liability under 18 U.S.C. §§ 2511 and 2520.

Therefore, on the face of the complaint, G&G only prays for damages for violations of §§ 605 and 553. However, in the motion for default judgment, G&G requests relief under only § 553.[1] R. Doc. 11-3 at 4. It seeks $50,000 in statutory damages, as well as costs and reasonable attorneys' fees.[2] The memorandum demonstrates that G&G has effectively abandoned the

---

[1] Although G&G has alleged violations of §§ 553 and 605, in its memorandum in support of its motion for default judgment, G&G seeks relief under § 553 only. *See* R. Doc. 17-1 at 5 n.19.

[2] It its complaint, G&G prayed for statutory damages in the amount of $110,000.00 for Defendants' alleged violations of § 605 and $60,000.00 for Defendants' alleged violations of § 553. R. Doc. 1 at 14–15. It does not reiterate this demand in its motion for default judgment.

complaint's prayer for damages related to its § 605 claims. *E.g.*, R. Doc. 11-3 at 4, 9. The Court will only address § 553 liability and damages.

**III.   LAW**

Under Federal Rule of Civil Procedure 55(b), a default judgment may be entered against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required timeframe. A party who seeks a default judgment against an uncooperative defendant must first petition the court for the entry of default, which is simply "a notation of the party's default on the clerk's record of the case." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir. 1986); *see also United States v. Hansen*, 795 F.2d 35, 37 (7th Cir. 1986) (describing the entry of default as "an intermediate, ministerial, nonjudicial, virtually meaningless docket entry"). Before the Clerk may enter a defendant's default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). "Beyond that requirement, however, the entry of default is largely mechanical." *Valdes-Fauli v. Medford*, No. 11-618, 2011 WL 2790193, at *2 (E.D. La. July 15, 2011).

Once default has been entered, the plaintiff's well-pleaded factual allegations are deemed admitted. *See Nishimatsu Const. Co. v. Houst. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). At the same time, the defaulting defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* But "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact." *Id.* at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022).

After the defendant's default has been entered, the plaintiff may request the entry of judgment on the default. If the plaintiff's claim is for a sum certain and the defendant has not made

an appearance in court, the request for a default judgment may be directed to the clerk. Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). No party is entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). The disposition of a motion for the entry of default judgment ultimately rests within the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

### IV.   ANALYSIS

The Court will first assess whether default judgment is procedurally appropriate. Then it will search the record to see if there is a sufficient basis in fact for default judgment on G&G's claims that Defendants violated 47 U.S.C. § 553. It will conclude by assessing damages.

#### A. Default Judgment Is Procedurally Proper.

The Court finds that the entry of a default judgment is procedurally appropriate because Defendants have failed to file a responsive pleading or otherwise appear in/defend this case. The Clerk entered an order of entry of default against Defendants. R. Doc. 9. Both procedural prongs are satisfied. As a result, Plaintiff's well-pleaded allegations are taken as true as this Court assesses whether Defendants are liable to Plaintiff under the theories asserted in the complaint.

#### B. Plaintiff Is Entitled to Default on Its 47 U.S.C. § 553 Claim.

##### a. Liability Under 47 U.S.C. § 553

G&G alleges that Defendants deprived Plaintiff of lawful financial gain by unlawfully intercepting and broadcasting its closed-circuit television Program. R. Doc. 11-3 at 3. The Fifth Circuit has opined that "[t]he legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable

services." *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001). To that end, Congress enacted these statutes. "Section 553 prohibits the unauthorized interception of *wired* communications offered over a cable system, while [s]ection 605 prohibits the authorized interception of *non-wired* communications." *J&J Sports Prods., Inc. v. JD Alexander Invests., LLC*, No. 17-64, 2018 WL 2323291, at *2 (S.D. Tex. Jan. 4, 2018) (internal references omitted).

Courts in this circuit have previously held that to prevail under 47 U.S.C. § 553, or, for that matter, § 605, a plaintiff "need only show (1) that the Event was shown in Defendants' establishment, (2) that the Event was shown without authorization by Plaintiff, and (3) that Plaintiff was the exclusive licensee." *Rivals Sports Grill*, 2014 WL 198159, at *1. In 2014, the Fifth Circuit held that § 553 and § 605 are not interchangeable, as § 553 prohibits only the unauthorized interception of cable communications while § 605 prohibits the unauthorized receipt of radio or satellite communications. *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014). Thus, a plaintiff must establish whether a defendant intercepted a satellite or cable communication to prove liability under one or the other section.

This additional requirement presents a problem in cases such as this, where Defendants' default precludes Plaintiff from engaging in discovery to identify how the defendant intercepted its programming. As a result, the Court will permit G&G to establish liability without proving whether the conduct at issue violates § 553 or § 605, even though G&G only requests its damages award under § 553. *E.g.*, *J&J Sports Prods., Inc. v. Tiger Paw Daquiris & Grill, LLC*, No. 14-268, 2015 WL 1800619, at *4 (M.D. La. April 16, 2015); *J&J Sports Prods., Inc. v. Dinette, LLC*, No. 18-4405, 2019 WL 13537650, at *2 (E.D. La. Oct. 11, 2019); *see also J&J Sports Prods., Inc. v. Wine Bistro LLC, et al.*, No. 13-6369, slip op. at *8–9 (E.D. La. July 30, 2014) (evaluating the

6

plaintiff's claims under § 553 and § 605, because the method of broadcast interception could not be proven without the defendant's cooperation).

The Court finds that G&G has established Patio's liability under 47 U.S.C. § 553 and is therefore entitled to default judgment. First, Plaintiff included enough well-pleaded facts and record evidence to establish that Patio exhibited the Program. R. Doc. 1 at 7–8; 11-5 at 1 (affidavit of private investigator detailing that Patio broadcasted the Program on two televisions). Second, G&G evidenced that it did not grant Defendants any sub-licensing rights or any other right to display the program in a commercial establishment. R. Doc. 1 at 10; R. Doc. 11-12 (sworn statement of G&G's President). Finally, G&G demonstrated that it obtained the exclusive license to distribute and broadcast the Program, via closed circuit, to commercial establishments nationwide. *Id.*; *see also* R. Doc. 11-13 (copy of the April 29, 2022, license contract between G&G and PBC on PPV, LLC). Thus, G&G has established Patio's liability under § 553, and the Court will grant G&G's motion for default judgment.

### b. Weatherspoon Is Vicariously Liable for Patio's Exhibition of the Program

To establish vicarious liability, G&G must show that Weatherspoon "had a right and ability to supervise the infringing activities, and [] an obvious and direct financial interest in the exploitation." *Zuffa, LLC v. Trappey*, No. 11-6, 2012 WL 1014690, at *4 (W.D. La. Mar. 22, 2012) (quoting *J&J Sports Prods., Inc. v. Q Café*, No. 10-2006, 2012 U.S. Dist. LEXIS 8700, at *11, 2012 WL 216274 (N.D. Tex. Jan. 25, 2012)).

In this case, G&G alleges, and the Court accepts as true, that Weatherspoon was a member and manager of Patio at the time the Program was unlawfully intercepted by Patio. R. Doc. 1 at 9; 11-17 (Louisiana Secretary of State website listing for Patio Hookah Lounge LLC listing

7

Weatherspoon as the only officer of the company). Thus, Weatherspoon had the right and the ability to supervise the infringing activities. *See J&J Sports Prods., Inc. v. Imperial Lounge & Sports Bar, Inc.*, No. 08-2061, 2012 WL 1356598, at *3 (E.D.N.Y. Mar. 30, 2012) (inferring supervisory control and financial benefit sufficient to hold the individual defendant liable because the individual defendant was "named as the principal of Imperial Lounge & Sports Bar Inc. in the records of the New York State Liquor Authority, Division of Alcoholic Beverage Control"). Moreover, as a member of Patio, Weatherspoon had a direct and obvious financial interest in its sales. *See Zuffa*, 2012 WL 1014690, at *5. As a result, the Court concludes that Weatherspoon may be held vicariously liable for the Patio's unlawful showing of the Program.

### c. Damages

Having concluded that both Patio and Weatherspoon are liable for unlawfully broadcasting the Program, the Court now considers damages. The Court will first consider what constitutes a "just" award of statutory damages pursuant to 47 U.S.C. § 553, including any entitlement to enhanced damages for willful violations. It will then address the attorneys' fees and costs award.

### i. Statutory Damages

Plaintiff here elected to pursue statutory rather than actual damages. 47 U.S.C. § 553(c)(2). Section 553 provides that a court may award persons who prevail on their claim either statutory or actual damages as well as full costs and reasonable attorneys' fees. 47 U.S.C. § 553(c)(2). The statutory damages award may be "in a sum of not less than $250 or more than $10,000 as the court considers just." *Id.* at § 553(c)(3)(A)(ii). Once a court determines a "just" amount, it may increase the award by no more than $50,000 if it finds that "the violation was committed willfully and for purposes of commercial advantage or private financial gain." *Id.* at § 553(c)(3)(B). Similarly, if

the Court finds the violation of § 553 is unwitting, the Court may, at its discretion, lower the damages award. *Id.* at § 553(c)(3)(C); *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1006 (2d Cir. 1993).[3]

"Several courts in similar cases have found statutory damages in an amount at least twice, if not three times, the cost of the sublicensing fee for lawful broadcast to be 'just.'" *Dinette*, 2019 WL 13537650, at *3 (collecting cases). Here, Plaintiff's "Rate Card" shows that establishments which have a capacity of 1 to 100 patrons were required to pay $1,700 to broadcast the Program. R. Doc. 11-14; 11-12 at 4. However, considering the record evidence that relatively few patrons (8–14) visited Patio during the broadcast, the Court finds an award of $1,700 in statutory damages to be reasonable. *J&J Sports Prods., Inc. v. Elonia Garcia, Bly, Inc.*, No. 13-743, 2016 WL 4479516, at *2 (S.D. Ind. Aug. 24, 2016) ("While defendants who 'pirate' licensed broadcasts should be made to pay up, the Court is also charged with balancing equities . . . .").

### ii. Enhanced Damages

Section 553 permits an increased damages award of not more than an additional $50,000 if the plaintiff demonstrates that the defendant committed its acts willfully and for purposes of commercial advantage or private financial gain. 47 U.S.C. § 553(c)(3)(B). Another section of this court has previously defined "willful" as "disregard for the governing statute and an indifference for its requirements." *DirecTV, LLC v. Ertem*, No. 13-487, 2014 WL 2807541, at *3 (E.D. La. June 20, 2014) (citing *ON/TV of Chi. v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). To conduct the willfulness analysis, courts consider the following five factors:

---

[3] Similarly, under § 605, "the party aggrieved may recover an award of statutory damages for each violation . . . of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Further, the statute provides for a reduction of damages to $250 where "the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section." *Id.* at § 605(e)(3)(C)(iii).

> (1) whether the defendant engaged in repeated violations over an extended period of time; (2) whether the defendant realized substantial unlawful monetary gains; (3) whether the defendant advertised the broadcast; (4) whether an admission fee or food and drink premium was charged; and (5) whether the plaintiff suffered significant actual damages.

*Tiger Paw*, 2015 WL 1800619, at *6 (quoting *J&J Sports Prods., Inc v. Wine Bistro LLC*, No. 13-6369, slip op. at 13 (E.D.La. July 30, 2014)).

First, Plaintiff's evidence is silent as to whether Defendants engaged in repeated violations over an extended period. Similarly, Plaintiff does not direct the Court to evidence that Defendants realized substantial unlawful monetary gains. As to the third factor, Plaintiff's private investigator attested that Defendants advertised the event, but did not file a copy of the Eventbrite advertisement in the record. R. Doc. 11-5 at 1. Moreover, the investigator's affidavit stated that he paid no cover charge to enter Patio, but the affidavit and other record evidence fails to address whether Patio charged a premium for food and drinks. *See id.* Finally, the affidavit of G&G's President details the company's efforts in curbing piracy and piracy's effects on its business. R. Doc. 11-12. However, the record does not reflect that Plaintiff suffered significant actual damages other than the sublicensing fee that it should have received.

Overall, there is little record evidence supporting Plaintiff's contention that Defendants' actions are so willful to warrant significant enhanced damages. However, courts in this circuit routinely award statutory penalties in cases like this to deter this kind of conduct because programs such as this cannot be mistakenly, innocently, or accidentally intercepted. *E.g.*, *Tiger Paw*, 2015 WL 1800619, at *6; *Dinette*, 2019 WL 13537650, at *3. Thus, the Court finds that an additional $300, for a total of $2,000, is an appropriate enhanced damages award in this case.

### iii. Attorneys' Fees and Costs

In addition to statutory damages, G&G seeks full costs and reasonable attorneys' fees. Had G&G sought relief under § 605 in its motion for default judgment, the Court would be required to award full costs and attorneys' fees. 47 U.S.C. § 605(e)(3)(B)(iii). Under § 553, however, an award of costs and attorneys' fees is permissible and not mandatory. *Id.* § 553(c)(2)(C). Here, G&G did not submit any documentation related to its request for costs and attorneys' fees. Because of the lack of record evidence upon which to base an award, the Court will decline to grant G&G any attorneys' fees and/or costs.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff G&G Closed Circuit Events, LLC's motion to confirm the clerk's default against Patio Hookah Lounge LLC and Donovan Weatherspoon, R. Doc. 11, be **GRANTED**. The Court awards Plaintiff a total $2,000 for statutory and enhanced damages. The Court declines to award attorneys' fees and costs.

New Orleans, Louisiana, this 27th day of January, 2026.

_____
THE HONORABLE ELDON E. FALLON